**Frank E. LATIMER, Appellant (Employee–Claimant),**

v.

**RISSLER & MCMURRY CO., Appellee (Employer–Objector).**

No. 95–14.

Supreme Court of Wyoming.

Sept. 12, 1995.

Harry G. Bondi of Harry G. Bondi, P.C., Casper, for appellant.

James A. Raymond of Brown & Raymond, P.C., Casper, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Frank Latimer appeals from the district court's order which affirmed the hearing examiner's decision to deny Latimer's request for worker's compensation benefits.

We affirm.

## ISSUES

Latimer presents the following issues for our review:

1. Whether the finding of the hearing examiner, Office of Administrative Hearings, that the Appellant did not sustain an injury arising out of and in the course of his employment is supported by substantial evidence, and whether the decision was arbitrary and capricious.

2. Whether the finding of [the] hearing examiner, Office of Administrative Hearings, that the Employee–Appellant did not disclose to Drs. Philip D. Gordy and Kathy Gardner that he had a minor shin contusion and ankle fracture (a non-displaced distal fibular fracture) is supported by substantial evidence.

3. Whether the finding of the hearing examiner, Office of Administrative Hearings, that the Employee–Appellant's August 2, 1991 shin contusion and non-displaced distal fibular fracture could have been the cause of Appellant's low back pain is supported by substantial evidence.

## FACTS

Latimer was employed by Appellee Rissler & McMurry Co., driving a belly dump truck. The drivers' seats on these types of trucks were equipped with hydraulic shock absorb-

ers so that the jarring from the bumps which they encountered would be softened. Latimer claimed that the hydraulic shock absorber was worn out in the truck which he drove and that, as a result, his back sustained excess jarring. Latimer's brother, who was a master mechanic with Rissler, testified that in the middle of June 1993 his department received a request to change the shock absorber in Latimer's truck.

Latimer testified that on June 23, 1993, he felt a sharp pain in his back when he was getting out of the pickup in which he and some co-workers had been riding in order to get to the work site. One of these co-workers testified that he had heard Latimer make a noise as he was getting out of the pickup on that date and that he could tell Latimer was in some sort of pain.

A contested case hearing was held before the Office of Administrative Hearings. The hearing examiner found that Latimer had failed to prove that his claim arose out of and in the course of his employment under Wyo. Stat. §§ 27–14–102(a)(xi) and –603(a) (Supp. 1995) and that Latimer had failed to prove the elements which were listed under § 27–14–603(a). The hearing examiner, therefore, denied Latimer's request for worker's compensation benefits.

Latimer filed a motion for reconsideration in which he attempted to refute some of the hearing examiner's specific findings; i.e., that the medical experts had not been given a full history of prior conditions which could have contributed to Latimer's pain. Latimer claimed in his motion that the medical experts had been provided with correct medical histories, and he included an affidavit from one medical expert in which the expert claimed that he had been provided with a copy of all Latimer's medical records and that he had known about Latimer's ankle injury and possible "short leg."

After holding a hearing on the matter, the hearing examiner denied Latimer's motion. Latimer appealed to the district court, and the district court affirmed the hearing examiner's decision. This appeal followed.

## STANDARD OF REVIEW

W.R.A.P. 12.09 provides that a judicial review of administrative decisions is limited to a determination of the matters which are specified in Wyo.Stat. § 16–3–114(c) (1990). Section 16–3–114(c) provides in pertinent part:

(c) ... [T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

.    .    .    .    .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

.    .    .    .    .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*See Worker's Compensation Claim of Taylor v. State ex rel. Wyoming Worker's Compensation Division,* 890 P.2d 559, 560–61 (Wyo. 1995). "[A]n agency's action is arbitrary and capricious and must be reversed if any *essential* finding is not supported by substantial evidence." *Majority of Working Interest Owners in Buck Draw Field Area v. Wyoming Oil and Gas Conservation Commission,* 721 P.2d 1070, 1079 (Wyo.1986) (emphasis added).

■ Whether an employee's injury occurred in the course of his employment is a question of fact. *Hepp v. State ex rel. Wyoming Workers' Compensation Division,* 881 P.2d 1076, 1077 (Wyo.1994). We review an administrative agency's findings of fact by applying the substantial evidence standard. Section 16–3–114(c)(ii)(E). Our task is to examine the entire record to determine whether substantial evidence supported the

hearing examiner's findings. *Romero v. Davy McKee Corporation,* 854 P.2d 59, 61 (Wyo.1993). We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. *Bearden v. State ex rel. Wyoming Workers' Compensation Division,* 868 P.2d 268, 269 (Wyo.1994). Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Jackson v. J.W. Williams, Inc.,* 886 P.2d 601, 603 (Wyo.1994).

## DISCUSSION

■ Latimer essentially bases his appeal on his claim that the hearing examiner's conclusion that Latimer did not sustain an injury which arose out of and in the course of his employment was arbitrary, capricious, and an abuse of discretion because substantial evidence did not support some of the findings of fact.

Section 27–14–603(a) provides:

(a) The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to prove by competent medical authority that his claim arose out of and in the course of his employment and to prove by a preponderance of evidence that:

(i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;

(ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;

(iii) The injury can fairly be traced to the employment as a proximate cause;

(iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and

(v) The injury is incidental to the character of the business and not independent of the relation of employer and employee.

"Injury" is defined as being

any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

Section 27–14–102(a)(xi).

In the order in which he denied Latimer's claim for worker's compensation benefits, the hearing examiner found the following:

14. In this case, the Claimant has failed to prove, by competent medical authority, that his claim arose out of and in the course of his employment. While Dr. Gordy characterized the employment as a major contributing factor, this was based upon a faulty history given by the Claimant, and was not supported by the other medical authority in this case. The medical evidence received from Dr. Hollifield and Dr. Delgadillo made no reference to any jarring of a seat, as having anything to do with the Claimant's condition.

15. In addition, the Claimant did not show a direct causal connection between the condition or circumstance under which the work was performed and the injury. Regardless of which version is accepted as true, it is clear the Claimant did nothing unusual in either getting into the truck or out of the truck which resulted in his complaints of pain.

16. The Claimant also failed to show that the alleged injury could be seen to have followed as a natural incident of the work as a result of his employment. Once again, the pain which the Claimant said he experienced could just as easily have occurred as a result of getting into or out of a personal vehicle.

17. The alleged injury cannot be fairly traced to the employment as a proximate cause for the reasons set forth above. In addition, the Claimant failed to show that the injury did not come from a hazard to which he would have been equally exposed outside of the employment. The degenerative disc disease which the Claimant was diagnosed as having is commonly a result

of the aging process and may very well be related to the previous leg injury sustained by the Claimant. The alleged injury claimed herein is not incidental to the character to the Objector's business, and benefits herein should be denied.

We are aided in this case by the existence of a second order, the order which denied Latimer's motion for reconsideration. This second order is beneficial because it gives us considerable insight into the hearing examiner's rationale as to the issues which Latimer has presented in this appeal. The relevant portions of the order which denied Latimer's motion for reconsideration are as follows:

3. The matter will therefore be reconsidered at this time. Does the fact that Dr. Gordy had information regarding the fracture to the ankle, which he stated was not related to the back injury, change the denial of benefits herein? This question is answered in the negative, for the reasons set forth below.

4. In terms of what was ultimately determined to be wrong with the Claimant's back, the letter of August 10, 1993, from Dr. William W. Hollifield, a neurologist, to Dr. Steve Webb, indicated the Claimant "is a middle aged gentlem[a]n with degenerative disc disease." Dr. Hollifield went on to state his opinion that the degenerative disc disease was the main cause of the Claimant's back pain. With regard to an MRI film, showing a "verdict tiny" disc herniation, he found that not to be "clinically significant." Dr. Philip Gordy, in his letter of September 22, 1993, agreed, and thought the back pain was of a "musculoskeletal origin." Dr. Hollifield's examination of the Claimant found "good range of motion in the lumbar area," with no spasms, no deformities, no scoliosis, with symmetric reflexes and a sensory examination which was determined to be "normal[."] Dr. Gordy, in his letter of September 22, 1993, agreed.

5. Even with Dr. Gordy's Affidavit, there is still no satisfactory explanation as to why the Claimant had a "short leg" and used a "heel lift[."] This was never adequately explained. From a common-sense standpoint, a non-displaced ankle fracture would not normally result in a short leg, and would not normally be related to a back injury. Dr. Philip Gordy, in his Affidavit which was submitted in support of the Motion for Reconsideration, speculated, in paragraph 9, that there was a possibility of a "false short leg." However, he noted he did not know how the measurement of the short leg was made, and it was clear he really had little knowledge concerning it. However, the "short leg" was significant enough that a heel lift was used to apparently equalize the length of the legs. There is still no explanation as to why this heel lift was needed, and little weight is given to the speculation of Dr. Gordy that it might be a "false short leg[."] Therefore, Dr. Gordy's opinion that it was not related to the degenerative disc disease, when he did not know how long or for what reason the "short leg" had existed, does not seem entirely reasonable. In addition, Dr. Gordy testified, at the hearing on January 17, 1994, that degenerative disc disease was a very common aging change, and was a progressive change through middle age and so on. Dr. Gordy said his examination of the Claimant was essentially within normal limits if not for the Claimant's complaints.

6. Meanwhile, Dr. Kathy Gardner, in her letter dated November 22, 1993, found "mild degenerative disc disease and scoliosis[."] She stated the "repetitive jarring sustained in the truck sounds significant enough to cause the initial injury." Therefore, the Claimant's claim that the jarring from driving the truck at work resulted in the degenerative disc disease is a possibility. However, Dr. Gardner never expressed the opinion that the jarring "probably" caused the injury, only that it was a possibility.

7. In addition, it seemed to this Hearing Examiner that the claim of the causation of the injury changed at various points. Initially, the Claimant apparently told his supervisor and filed a report of injury indicating he got hurt getting into a truck. Later, he indicated he got injured getting out of a truck. Then the claim seemed to evolve into an occurrence over a substantial period of time, resulting from

excessive jarring when he drove a truck at work, with no specific episode of injury, as told to Dr. Gordy. This is different from the earlier medical records of Dr. Hollifield and Marc Delgadillo, D.C., which make no reference to repetitive jarring in a truck, but rather, give specific episodes of injury.

8. In denying benefits, there were too many different stories about what happened. In addition to differences concerning getting into or out of a truck, there was a difference in dates of injury. The testimony at the hearing established an injury date of June 23, 1993, while the Report of Injury, signed June 25, 1993, gave an injury date of June 24, 1993. The "injury" sustained was a common aging change, and his neurological examinations were essentially normal. As such, for the reasons set forth herein and in the Order Denying Benefits, the Motion for Reconsideration is denied.

■ Substantial evidence supported the hearing examiner's conclusion that Latimer had failed to prove "by competent medical authority" that his claim arose out of and in the course of his employment. Section 27–14–603(a). When the inconsistencies in the evidence and the claimant's testimony make it impossible for the hearing examiner to determine whether the accident arose out of in the course of his employment, the claimant has failed to sustain his burden. *Farman v. State ex rel. Wyoming Workers' Compensation Division*, 841 P.2d 99, 103 (Wyo.1992).

The hearing examiner was in the best position to judge Latimer's credibility. *Padilla v. Lovern's, Inc.*, 883 P.2d 351, 355 (Wyo. 1994). He noted in his orders that he was concerned about the differing versions which were given as to how Latimer had sustained his injury as well as about the lack of information which the medical experts had received with regard to any previous conditions which may have contributed to Latimer's back pain.

The hearing examiner was also in the best position to judge the weight to be given to the medical evidence. *Id.* The medical experts were equivocal on the question of whether Latimer's claimed injury was work related or whether it was the result of the

degenerative disc disease which was caused by the aging process. The hearing examiner's concern was justifiably heightened by the fact that the medical experts had based their testimony on information which had been provided by Latimer and by the fact that they apparently were not fully aware of the previous conditions which could have contributed to Latimer's pain.

Sufficient ambiguities in the evidence existed to trigger the process of weighing the evidence and assessing the credibility of the witnesses. That was a task for the hearing examiner, not for an appellate court.

"The testimony in this record may be subject to varying interpretations, but we will not usurp the function of the [trier of fact] in making factual findings with respect to this case. It is the duty of the trier of fact to weigh and evaluate the testimony of the witnesses, including that given by experts.... [The trier of fact] 'was the sole judge of the credibility of the witnesses and was entitled to interpret the evidence.' *Ward v. Yoder*, Wyo., 355 P.2d 371, 374 (1960)."

*Hepp*, 881 P.2d at 1079 (quoting *Creek v. Town of Hulett*, 657 P.2d 353, 357 (Wyo. 1983)).

**CONCLUSION**

We hold that the hearing examiner's decision was not arbitrary and capricious because the record contained sufficient evidence to support the essential findings of fact and his conclusion that Latimer had failed to prove his claim arose out of and in the course of his employment.

Affirmed.