In the Matter of the Worker's Compensation Claim of Edward S. EVERHEART, an Employee of S & L Industrial.

Edward S. EVERHEART, Appellant (Petitioner),

v.

S & L INDUSTRIAL,

and

State of Wyoming ex rel. Wyoming Workers' Safety And Compensation Division, Appellees (Respondents).

No. 97–109.

Supreme Court of Wyoming.

April 24, 1998.

---

Scott E. Kolpitcke of Cook and Associates, P.C., Laramie, for Appellant.

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, for Appellee State of Wyoming.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

The hearing examiner denied the claim for worker's compensation benefits which was submitted by Appellant Edward Everheart (the employee). The employee filed a petition with the district court for a review of the hearing examiner's decision, and the district court certified the case to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b).

We affirm the hearing examiner's decision.

## ISSUES

The employee presents the following issues for our review:

I. Whether the Office of Administrative Hearings acted arbitrarily and capriciously by incorrectly applying the law to the facts of this case with regard to the burden of proof and by disregarding expert medical testimony?

II. Whether the Office of Administrative Hearings' decision that the [employee] did not meet his burden of proof is supported by substantial evidence?

III. Whether the Office of Administrative Hearings acted arbitrarily and capriciously when it denied worker['s] compensation benefits to the [employee] without providing an opportunity for [the employee] to appear in person to resolve issues of credibility as the Office agreed to do?

## FACTS

The employee worked for Appellee S & L Industrial (the employer) as a traffic flagger for construction that was ongoing in Telephone Canyon. He claims that on September 6, 1996, his shoulder was injured when a truck hit a traffic barrel and the barrel hit him and knocked him to the ground. The employee went to the emergency room where he was given pain medication and a sling. He subsequently visited Michael Wasser, M.D., who diagnosed him with having an acromioclavicular joint separation. Dr. Wasser thereafter surgically repaired the employee's shoulder.

The employee filed a claim for worker's compensation benefits on September 16, 1996. The employer objected to the claim, and the case was referred to the Office of Administrative Hearings for a contested case hearing. At the outset of the hearing, the hearing examiner remarked that the employee's credibility seemed to be a major issue. She asked the employee if he would object to the hearing being conducted by telephone. The employee agreed to proceed by telephone "with the one stipulation ... that if any questions of credibility remain, we could leave these proceedings open for further questioning in person." The hearing examiner agreed to leave the proceedings open for in-person questioning if questions regarding the employee's credibility remained at the end of the hearing.

During the hearing, the parties presented conflicting testimony about what occurred on September 6, 1996. The employee testified in the following manner about the alleged incident: He signaled a truck to slow down because it was traveling at approximately sixty miles per hour. In response, the truck driver "flipped [him] off" and swerved the truck so that the trailer whipped and hit a traffic barrel. The barrel flew up and hit the employee in his mid-section, knocking him down on his shoulder. Although he was injured and on the ground, he managed to

pivot himself so that he could read the letters "ABF" and the number "53113" on the back of the truck even though he was not wearing his eyeglasses at the time. Upon regaining his composure, he got up, replaced the barrel, and continued flagging until he was relieved one to two hours later.

The employee further testified that, on the night before the incident, he and his foreman went to the Buckhorn Bar where he drank Pepsi–Cola. The next morning, his foreman woke him and took him to work. He also testified that, as a result of being knocked to the ground, he ripped the shoulder and elbow of his jacket and that he was crying when he spoke with his foreman after the incident. He said that, after the incident, his foreman took him to his vehicle which was in Laramie and that, on the way, the foreman advised the employee to get a lawyer.

The foreman offered a substantially different account. He testified that he and the employee went to the Buckhorn Bar on the night before the alleged incident occurred and that they both consumed a couple of beers. He stated that the employee did not ride to work with him the next day but, rather, that he asked the employee to come to work when he realized he was shorthanded. He also said that he did not notice torn clothing and that the employee was not crying when he reported the alleged incident to him. Finally, he denied having advised the employee to get an attorney.

A co-worker who saw the employee after the alleged incident testified that she did not notice torn clothing, dirt, or anything which would indicate that the employee was knocked to the ground and injured. Another co-worker testified that the employee initially informed her that the truck was traveling sixty-five miles per hour but that he later told her the truck was going only forty-five miles per hour. She further stated that she discovered the employee had submitted two employment applications to the company and that the applications included conflicting information.

The employee presented an affidavit from Dr. Wasser which stated that the employee's injury was consistent with his description of the incident and that it was "unlikely that [the employee] could have suffered this injury prior to reporting to work on September 6, 1996, due to the amount of pain [the employee] suffered from this injury." Dr. Wasser based his opinion on the employee's version of how his injury occurred. He also felt that the employee would not have been able to report to work if the injury had occurred before then because he would not have been able to tolerate the pain.

The employee also presented the testimony of the highway patrolman who investigated the incident. The highway patrolman stated that, upon completing his investigation, he issued a reckless driving citation to the truck driver. He testified that he had less than a year of experience at the time of the incident and admitted under cross-examination that he relied largely on the employee's version of the incident in reaching his conclusions. He also admitted that, although the barrel had scuff marks on it, he did not conduct tests to determine their age; that it was not uncommon for barrels to be hit at the worksite; and that the barrel could have been hit on a different day.

The truck driver testified that, during his thirty-two years of driving a truck, he had never been in an accident and that he had received annual safety awards. He also testified that he was driving approximately twenty-five miles per hour through the canyon. He explained that he was not angry or aggravated and that he did not "flip [anyone] off" or swerve toward anyone. He also stated that he absolutely did not hit a barrel.

The parties stipulated to the admission of the written statement of a second truck driver who was following the first truck through Telephone Canyon on September 6, 1996. The second truck driver stated that he was traveling at a speed of approximately twenty to twenty-five miles per hour and that the distance between his truck and the first truck seemed to stay the same. He also stated that he was about one-half to three-fourths of a mile behind the first truck and that he did not see the first truck swerve and hit a traffic barrel or anyone lying on the ground.

The truck driver's supervisor testified that he had known the truck driver since 1984. He said that the truck driver had a perfect record with ABF and that he had not had an accident or citation. He also explained that, assuming the truck was traveling at sixty miles per hour, it would have been about eighty feet away from the employee one second after it passed him. He also said that the letters and numbers on the back of the truck are four inches high and that it would be difficult for someone to read them at that distance.

In her order, the hearing examiner concluded that the employee failed to meet his burden of proof and denied his request for benefits:

14. Because of the wide divergence in the testimony presented in this case, it is incumbent upon this Office to assess the credibility of the witnesses in order to determine if Claimant has met his burden of proof. Based upon a review of all the evidence and testimony, this Office finds that the testimony of [the foreman, both truck drivers, and the truck drivers' supervisor] is the more credible and that Claimant has therefore failed to meet the required burden of proof. The numerous inconsistencies occurring in this case seriously jeopardizes the credibility of the Claimant. The Claimant's testimony that the semi was travelling in excess of 65 miles per hour, that the driver intentionally swerved his 80,000 pound rig at him and that this action did not result in tragic consequences is incredible. The Claimant's testimony that he could read the numbers on a truck travelling 88 feet per second, without his glasses, and after being knocked to the ground, is even more incredible. Couple this with a truck driver who has been driving for a living for 32 years without so much as a citation, greater doubt is created in Claimant's version of the events in this case. Add the testimony of [the foreman] who contradicted Claimant's testimony from the events of the evening before the accident all the way to the Claimant getting to work and later going to the hospital, and little is left to redeem Claimant's credibility. Although the doctor's affidavit states with medical certainty that Claimant suffered injuries from a work-related accident, that statement is based upon an acceptance of Claimant's version of the facts. Claimant's incredible version was also relied upon by [the highway patrolman] during his investigation of the accident as reported by Claimant.

15. Based on the above facts this Office finds that Claimant's version of his alleged September 6, 1996, accident and injury is not credible or believable and he has thus failed to prove by a preponderance of the evidence that he suffered a work-related injury.

The employee filed a petition for review with the district court, and the district court certified the case to this Court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

W.R.A.P. 12.09(a) provides that judicial review of administrative decisions is limited to a determination of the matters which are specified in Wyo. Stat. § 16–3–114(c) (1997). Section 16–3–114(c) provides in pertinent part:

(c) .... The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

## DISCUSSION

### A. Abuse of Discretion

The employee asserts that the hearing examiner acted arbitrarily and capriciously when she incorrectly applied the law to the facts of this case with regard to the burden of proof and when she disregarded the expert testimony.

A compensable injury is defined as:

any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. WYO. STAT. § 27–14–102(a)(xi) (1997). The employee carries the burden of establishing every essential element of a claim by a preponderance of the evidence. *Goddard v. Colonel Bozeman's Restaurant*, 914 P.2d 1233, 1236 (Wyo.1996). As a part of his burden, he must show that his injury arose out of and in the course of his employment. *Cabral v. Caspar Building Systems, Inc.*, 920 P.2d 268, 269 (Wyo.1996). To prove that the injury arose out of and in the course of his employment, the employee must show that a causal connection existed between the injury and the employment. *Johnson v. State ex rel. Wyoming Worker's Compensation Division*, 798 P.2d 323, 325 (Wyo.1990).

Sufficient conflicting evidence was presented with regard to whether a work-related accident occurred to trigger the process of weighing the evidence and assessing the witnesses' credibility.

> The testimony in this record may be subject to varying interpretations, but we will not usurp the function of the [trier of fact] in making factual findings with respect to this case. It is the duty of the trier of fact to weigh and evaluate the testimony of the witnesses, including that given by experts.... "[The trier of fact] was ... the sole judge of the credibility of the witnesses and was entitled to interpret the evidence."

*Creek v. Town of Hulett*, 657 P.2d 353, 357 (Wyo.1983) (quoting *Ward v. Yoder*, 355 P.2d 371, 374 (Wyo.1960)) (citation omitted). *See also Hepp v. State ex rel. Wyoming Workers' Compensation Division*, 881 P.2d 1076, 1079 (Wyo.1994).

■ The hearing examiner was in the best position to judge the employee's credibility. *Latimer v. Rissler & McMurry Co.*, 902 P.2d 706, 711 (Wyo.1995). Because of the numerous inconsistencies in the employee's report and his improbable account of the events surrounding the alleged incident, we defer to the hearing examiner's determination that the employee was not credible and that he did not show his injury arose out of and in the course of his duties as a flagger for the employer.

■ The hearing examiner was also in the best position to judge the weight to be given to the medical evidence. *Id.* "[T]he opinion of an expert may be disregarded if the trier of fact finds it to be unreasonable or not adequately supported by facts upon which the opinion is based." *Krause v. State ex rel. Wyoming Workers' Compensation Division*, 803 P.2d 81, 83 (Wyo.1990). The doctor based his opinion upon an assumption that the employee would not have been able to tolerate the pain if he had come to work with the injury. The employee, however, admitted that he was able to work for one to two hours after the alleged injury occurred. Furthermore, the doctor relied upon events that the employee was obliged to prove. When the employee failed to prove that those events actually occurred, the doctor's opinion became questionable.

Although the employee's account of what caused his injury indicated that his injury arose out of and in the course of his employment, he had the burden to establish that this version was true by a preponderance of the evidence. He did not meet that burden. The testimony of each credible witness was candid, straightforward, and consistent with the testimony from the other witnesses, and, when the testimony was examined as a whole, it supported the suspicion that the events as the employee described them did not occur.

## B. Burden of Proof

The employee contends that he met his burden of proof by presenting substantial evidence to support his claim and that the hearing examiner misconstrued the record and relied on evidence which was outside of the record.

Whether an employee's injury occurred in the course of his employment is a question of fact. *Cabral,* 920 P.2d at 269.

We review an administrative agency's findings of fact by applying the substantial evidence standard. Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions.

*Latimer,* 902 P.2d at 708–09 (citations omitted). We reiterate that it is the trier of fact's duty to weigh and evaluate the witnesses' testimony including the testimony given by experts. *Latimer,* 902 P.2d at 711. The reviewing court is foreclosed from reweighing the evidence. *Id.*

The hearing examiner was the sole judge of the witnesses' credibility and was entitled to analyze the evidence on the basis of her credibility determinations. Given our concurrence with the hearing examiner's conclusion that the employee's evidence was not believable or credible, we cannot conclude that the employee presented substantial evidence to support his claim.

Turning to the employee's claim that the hearing examiner misconstrued the record and relied on evidence which was outside of the record, we again do not detect a reason to disturb the hearing examiner's decision. The employee specifically challenges the emphasized sentences in the following paragraph of the order:

4. Claimant's application for S & L Industrial asks whether the applicant had ever been convicted of a crime. Claimant admitted that he lied on the application when he denied having any previous felony convictions to his employer. *Claimant admitted that he had previous convictions for issuing bad checks and for forgery. Other impeachment included Claimant testifying at the contested case hearing, as well as at a deposition hearing, that he had filed two previous workers' compensation claims and had never filed any other claims or suits in the past. At the contested case hearing Claimant was presented with evidence demonstrating an additional workers' compensation case filed by Claimant in 1994, as well as a lawsuit filed by Claimant in the U.S. District Court in Washington against Greyhound Bus Lines in 1994. Both claims revolved around an alleged right ankle injury. The employer in the previous workers' compensation case initially contested that case stating that she believed Claimant was acting in a way that he was faking the injury. The claim was subsequently paid. Claimant stated that he had forgotten about these cases.*

(Emphasis added.) The employee contends that the hearing examiner improperly relied on a forgery conviction that he never admitted happened. He also argues that he did not testify at the hearing that he had filed only two prior worker's compensation claims and no other lawsuits as indicated in the order. Finally, he complains that the evidence of his prior deposition testimony was irrelevant and inadmissible pursuant to W.R.E. 608(b) and WYO. STAT. § 16–3–108(a) (1997).

A hearing examiner in a worker's compensation hearing is not bound by the Wyoming Rules of Evidence. *Casper Oil Company v. Evenson,* 888 P.2d 221, 227 (Wyo.1995). Instead, "irrelevant, immaterial or unduly repetitious evidence" is excluded. Section 16–3–108(a). The decision regarding admissibility of evidence is committed to the sound discretion of the hearing examiner. *Goddard,* 914 P.2d at 1238. A hearing examiner abuses his discretion when his decision "shocks the conscience of the court." *Id.*

The hearing examiner based her finding that the employee admitted he had previously been convicted of forgery upon an investigation report which was admitted for impeachment purposes and which listed the employee's felony convictions. The report included a 1993 forgery charge, and it indicated that a judgment was entered against the employee. Furthermore, when the hearing examiner opined that the forgery conviction was proper impeachment evidence, the

employee did not challenge her choice of words.

■ The employee also disapproves of the hearing examiner's finding that he testified at the hearing and at his deposition "that he had filed two previous workers' compensation claims and had never filed any other claims or suits in the past." He maintains that, to reach this conclusion, the hearing examiner "pasted together pieces of inadmissible deposition testimony out of context, and filled in the gaps with incorrect assumptions."

At the hearing, the employee admitted that, during his deposition, he mentioned the two prior work-related burns, and he denied being involved in any other claims. When he was asked at the hearing why he did not mention the worker's compensation claims for a 1994 ankle and knee injury and a 1995 hand injury, he maintained that those claims slipped his mind. Also, during his deposition, he neglected to disclose a 1994 lawsuit against Greyhound for an ankle injury until the attorney for the Wyoming Workers' Safety and Compensation Division reminded him of it. We conclude that this evidence was relevant to the employee's credibility and that the hearing examiner did not err in interpreting or considering it.

## C.  In–Person Testimony

■ The employee contends that the hearing examiner acted arbitrarily and capriciously when she denied his claim for worker's compensation benefits without allowing him to testify in person after the telephonic hearing concluded. Because of bad weather conditions, the employee's attorney agreed to participate in a telephonic hearing "[a]s long as there's no prejudice to my client." Because everyone agreed that the employee's credibility was the major issue, the hearing examiner offered to continue the hearing to allow the employee to appear in person. The employee's attorney declined, stating:

> I guess I told [counsel for the Workers' Safety and Compensation Division] yesterday I wouldn't object to doing it this way, and I agree, I would hate to put it off at this point too. I guess I agreed to ... it with the one stipulation or one factor that

if any questions of credibility remain, we could leave these proceedings open for further questioning in person.

At the conclusion of the hearing, the hearing examiner announced her intention to render a decision within thirty days. The employee's attorney did not request an opportunity to present in-person testimony, and the hearing examiner subsequently entered her order without conducting further proceedings, concluding that the employee's version of the alleged incident was "not credible or believable."

The employee's request was that he be afforded an opportunity to present in-person testimony if, at the end of the hearing, a question remained with regard to his credibility. We do not detect anything in the hearing examiner's order which indicates that a question remained in her mind about whether the employee's testimony was credible. The fact that the hearing examiner decided the credibility issue against the employee does not mean that she harbored questions about his credibility. In fact, the record reveals the opposite; it reveals that the hearing examiner decided the employee was not credible. When the employee agreed to the hearing being conducted over the telephone, he necessarily knew that the issue would be determined one way or the other, and he agreed to abide by the hearing examiner's decision. We refuse to require further proceedings because the employee came out on the losing side of a risk that he agreed to take.

## CONCLUSION

The hearing examiner did not abuse her discretion when she denied the employee's claim for worker's compensation benefits or when she rendered her decision without having the benefit of in-person testimony.

The hearing examiner's decision is affirmed.