In the Matter of the Unemployment Compensation Claim of: **Wendy Pfaffhausen PETTE, Appellant (Petitioner/Claimant),**

v.

**STATE of Wyoming ex rel. DEPARTMENT OF EMPLOYMENT, Unemployment Insurance Commission and Tourism Promotion Joint Powers Board, Appellees (Respondents/Agency/ Employer.)**

No. 98–8

Supreme Court of Wyoming.

Dec. 14, 1998.

Bill G. Hibbler, Cheyenne, Wyoming, for Appellant.

William U. Hill, Attorney General; and Joe Scott, Senior Assistant Attorney General, Representing Appellee State:

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

MACY, Justice.

Appellant Wendy Pette appealed to the district court from the denial of her claim for unemployment insurance benefits. The district court certified the case to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b).

We reverse and remand.

## ISSUES

Pette presents two issues for our consideration:

I. Whether Decision of Commission[ ] No. C–6401–97, holding that Ms. Pette is disqualified from receiving unemployment compensation benefits, because she voluntarily left her most recent work without good cause and not for a bona fide medical reason, is supported by substantial evidence?

II. Whether Ms. Pette is eligible for unemployment compensation benefits, because Decision of Commission No. C–6401–97[ ] is arbitrary, capricious, an abuse of discretion or contrary to law, based upon the commission's failure to apply its own precedent decisions, as required by Wyoming Statute § 27–3–406(b)?

## FACTS

Pette was employed by Appellee Tourism Promotion Joint Powers Board (the tourism board) as a convention sales manager. Her job duties included marketing the City of

* Chief Justice at time of oral argument; retired November 2, 1998.

Cheyenne to various groups to encourage them to schedule their conventions, meetings, and conferences in Cheyenne. Pette was required to make numerous sales calls to these groups to fulfill the duties of her position.

In the summer of 1996, the tourism board hired a new executive director. In late December 1996 or early January 1997, the executive director reviewed Pette's work performance. The executive director criticized Pette's time management skills and her general attitude. Pette was directed to increase the number of sales calls she made per week from 50 to 150 and to reduce the time she spent on each call. As a result of the poor job performance review, Pette sensed that her job was in jeopardy.

Pette complained to the tourism board and the executive director that the quota of 150 sales calls per week was unreasonable; consequently, they reduced the quota to 100 sales calls per week. In February 1997, the executive director reviewed Pette's job performance for a second time. Pette had not met the sales call quota, and the executive director told her that, if she did not meet the goal by the end of March 1997, termination of her employment was a possibility.

On March 20, 1997, Pette submitted a resignation letter to the executive director and the tourism board. Her letter stated in relevant part:

After careful consideration, it is with regret that I submit my resignation as Convention Sales Manager. I have reached this decision primarily due to the recent mandate to increase sales call quotas. I have worked hard since January to meet the new requirements. The results have shown an increase in sales call productivity to an average [of] 79 calls weekly and a considerable rise in tentative group bookings. However, this growth apparently is not enough, for it falls short of the 100 calls which you have directed. It is my firm belief that quality of work is being jeopardized in favor of quantity. The demand to produce at such a rate has been so stressful that I can no longer continue to work under this pressure on a day to day basis.

Understanding fully the importance of a smooth transition and continued momentum in this position, I will stay until April 25, 1997. After this date, I am offering my services on a weekly basis with the understanding that a one week notice of termination [will] be given by either party.

The tourism board's personnel committee met the next day. At four o'clock in the afternoon of March 21, 1997, the executive director informed Pette that her resignation was accepted, effective that day, and that she had one hour in which to vacate the premises.

Pette subsequently filed a claim for unemployment insurance benefits. A claims deputy for the employment resources division determined that Pette was not qualified to receive unemployment insurance benefits because she voluntarily left her employment without having good cause which was directly attributable to her employment or a bona fide medical reason. Pette appealed from the deputy's decision. The chief appeals examiner for the unemployment insurance division held a contested case hearing on June 10, 1997. The examiner reversed the deputy's determination and awarded unemployment insurance benefits to Pette. The tourism board appealed from the examiner's decision to Appellee Department of Employment, Unemployment Insurance Commission (the commission). On August 12, 1997, the commission reversed the examiner's decision and denied Pette's request for benefits.

Pette petitioned the district court for a review of the commission's decision. The district court certified the case to the Wyoming Supreme Court.

## STANDARD OF REVIEW

When a case has been certified to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b), we review the case by applying the appellate standards which are applicable to a reviewing court of the first instance. *Weaver v. Cost Cutters*, 953 P.2d 851, 854 (Wyo.1998). W.R.A.P. 12.09(a) limits judicial review of administrative decisions to a determination of the matters specified in

WYO. STAT. ANN. § 16–3–114(c) (Michie 1997). *Everheart v. S & L Industrial,* 957 P.2d 847, 851 (Wyo.1998). Under § 16–3–114(c)(ii), the reviewing court may reverse an agency's action if that action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *State ex rel. Wyoming Workers' Safety and Compensation Division v. Bruhn,* 951 P.2d 373, 376 (Wyo. 1997).

 We will not disturb an agency's findings of fact unless they are clearly contrary to the overwhelming weight of the evidence. *Weaver,* 953 P.2d at 855. We do not, however, grant the same deference to an agency's conclusions of law. *Nelson v. Sheridan Manor,* 939 P.2d 252, 255 (Wyo.1997). We affirm an agency's conclusions of law when they are in accordance with the law. *Corman v. State ex rel. Wyoming Workers' Compensation Division,* 909 P.2d 966, 970 (Wyo.1996). When an agency has not invoked and properly applied the correct rule of law, we correct the agency's errors. *Gneiting v. State ex rel. Wyoming Workers' Compensation Division,* 897 P.2d 1306, 1308 (Wyo.1995).

## DISCUSSION

We will initially consider Pette's second issue because our resolution of that issue is dispositive in this case. The commission determined that, although the tourism board unilaterally changed Pette's separation date from the April 25, 1997, date set out in her resignation letter to March 21, 1997, Pette voluntarily left her employment without having good cause and that she was not, therefore, entitled to receive unemployment insurance benefits. The commission relied upon WYO. STAT. ANN. § 27–3–311(a)(i) (Michie 1997) in making its determination. That statutory section states:

(a) An individual shall be disqualified from benefit entitlement beginning with the effective date of an otherwise valid claim or on the date the failure occurred, until he has been employed in an employee-employer relationship for a period of at least twelve (12) weeks whether or not consecutive, and has earned at least twelve (12) times the weekly benefit amount of his current claim for services after that date, if the department finds that he:

(i) Left his most recent work voluntarily without good cause attributable directly to his employment, except for bona fide medical reasons involving his health or if returning to approved training which meets the requirements of W.S. 27–3–307[.]

Section 27–3–311(a)(i).

Pette maintains that the commission's denial of her claim for unemployment insurance benefits was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law. She asserts that the commission improperly refused to apply its earlier legal rulings concerning situations where an employee quits, effective on a certain date, and the employer directs the employee to leave earlier. The commission's development of precedent on this issue has, to say the very least, been a tumultuous process. On June 29, 1993, the commission issued a decision in the case of *Brigance v. Taco Bell Corporation,* No. C–5025–93 (June 29, 1993). In that decision, the commission stated:

We recognize that the Division, by precedent, has treated situations, such as this, where the employee gives notice of intention to quit sometime in the future, for example two weeks or a month, and the employer moves up the separation as a quit. This precedent is hereby overruled for the following reasons. A sort of counterpart precedent to this involves the situation where the employer tells the employee his job will be over some time in the future, for example two weeks, a month, or when the project is completed and the employee chooses to leave earlier. This situation was also treated as a quit and we believe it still should be. However, in both situations, the claimant usually ended up being disqualified for quitting without good cause. Also, this is not fair. We believe, that as a matter of policy, we should encourage the employee and employer to maintain that relationship as long as possible. This will put off as long as possible the time the employee will become a claimant drawing unemployment benefits. This can be accomplished by *treating it as a discharge when the employer moves up*

*the separation date and treating it as a quit when the claimant moves up the separation date.* Of course, the employer will still have the opportunity to prove that the discharge was for misconduct connected with work and the claimant may prove that the quit was for good cause connected with employment.

*Brigance,* No. C–5025–93 at 2 (emphasis added). Less than a year later, the commission overruled the legal principle it had articulated in the *Brigance* case, stating:

> Since we issued our Decision No. C–5025–93 [the *Brigance* decision], we have noted some problems that we did not anticipate when it was issued. While it is desirable to keep the claimant and employer together and delay the time when the claimant will go on unemployment as long as possible, there are other considerations. The unfortunate reality is that there are frequently hard feelings when an employee quits or when an employer fires him even when a few weeks notice is given. It is not desirable to force the parties to remain together in this situation. There are other practical reasons why the parties should be allowed to move up the final day of work. For example, sometimes an employee may have an opportunity for a new job, but only if he pursues that opportunity now, rather than waiting two weeks until the layoff becomes effective. For these reasons, we are overruling our precedent in Decision No. C–5025–93.
>
> The new precedent will be as follows:
>
> *If the employee gives notice to his employer that he intends to quit at a certain time in the future, and the employer moves up the actual termination date by a month or less, the situation will be treated as a quit.* The decision will then have to be made on whether the claimant quit for good cause directly attributable to employment or for a bona fide medical reason. *If an employer has given notice to his employee that the job will end a certain time in the future, and the employee moves up the actual termination date by a month or less, the situation will be treated as a dis-charge.* The decision will then have to be made whether the discharge was for misconduct connected with work. By a certain time in the future, we mean to include when a particular event occurs, such as when school is out or when the project is completed, as well as a particular day.
>
> We recognize that justice will require that future precedents will have to allow for some exceptions to this.

*Capasso v. Nagel Motors, Inc.,* No. C–5396–94 at 2 (May 17, 1994) (emphasis added).

■ Pette gave notice on March 20, 1997, that she was resigning effective April 25, 1997, and the tourism board directed her to leave her job on March 21, 1997. A true application of the *Capasso* decision would have resulted in Pette's employment termination being treated as a discharge because the tourism board moved up her separation date by a month and four days. The commission did not, however, follow the rule set out in *Capasso.* It quoted the "new precedent" from the *Capasso* decision but stated that it was only "a guideline and presumption." The commission concluded that Pette was not entitled to receive unemployment insurance benefits because she voluntarily resigned from her position without having good cause which was directly attributable to her employment.

We must consider WYO. STAT. ANN. § 27–3–406(b) (Michie 1997) in resolving this case. That statutory section provides:

> (b) Unless expressly or impliedly overruled by the commission or a court of competent jurisdiction, principles of law adjudicated under a final decision of the commission or an appeal tribunal are binding on the commission, a special examiner and an appeal tribunal in proceedings involving similar questions of law.

Section 27–3–406(b). Pette claims that § 27–3–406(b) required the commission to follow the legal principles which it had articulated in the *Capasso* decision and to, therefore, treat her separation from employment as being a discharge. The commission argues that its rulings were correct because, under § 27–3–406(b), it may modify and clarify its precedent in the context of a particular case.

The gist of the commission's argument is that § 27–3–406(b) allows it to change its precedent and apply the new rule in the same case.

This Court gives effect to the plain language of an unambiguous statute. *Lyles v. State ex rel. Division of Workers' Compensation*, 957 P.2d 843, 846 (Wyo.1998). The plain language of § 27–3–406(b) directs the commission to follow its earlier declarations of principles of law except when a precedent has been overruled. If the commission were allowed to deviate from its precedent on a case-by-case basis, it would not truly be bound by its precedent, and § 27–3–406(b) would, in effect, be a nullity. We do not believe the legislature intended that result. We conclude that, under § 27–3–406(b), the commission must give effect to its former adjudications of principles of law and may only change a precedent prospectively.

The commission argues further that it was not bound by the *Capasso* decision because the decision was merely a presumption or a guideline. We recognize that the commission stated in *Capasso*, No. C–5396–94 at 2, that "justice will require that future precedents will have to allow for some exceptions" to the legal rule which was set out in that case. The commission did not define the factors it would take into account in a particular case in determining whether or not justice required it to make an exception to the rule.

Further, the commission did not, in this case, articulate its reasons for refusing to follow the *Capasso* rule. If we were to allow the commission to choose when to apply the rule and when not to, § 27–3–406(b) would not have a true effect.

The commission urges us to review its decision to determine whether substantial evidence supported its conclusion that Pette voluntarily left her employment without having good cause. The commission's argument completely disregards the legal precedent which it set out in *Capasso*. We cannot ratify the commission's failure to follow its precedent by simply reviewing whether or not sufficient evidence supported its factual determination. The commission's decision in this case was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

The commission's denial of Pette's claim for unemployment insurance benefits is reversed, and this case is remanded to the commission for entry of an order which is consistent with this opinion.