In the Matter of the Worker's Compensation Claim of:

Karen HEPP, Appellant (Employee–claimant),

v.

STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee(Objector–Defendant).

No. 98–198.

Supreme Court of Wyoming.

March 25, 1999.

Kathleen J. Doyle of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming, for Appellant.

John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; Bernard P. Haggerty, Senior Assistant Attorney General, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellant Karen Hepp (the employee) appeals from the district court's order which affirmed the Office of Administrative Hearings' denial of her claim for worker's compensation benefits.

We affirm.

## ISSUES

The employee submits two issues for our review:

1. Whether the Hearing Examiner applied an incorrect standard of law and burden of proof?

2. Whether substantial evidence supports the Hearing Examiner's findings and conclusions?

## FACTS

Community Media, Inc. (the employer) hired the employee in early December of 1995 to work as a sales representative for its radio station. Peggy Anderson and Jerry Walker managed the radio station, and, because of the employee's good reputation in the sales industry, they had been trying for some time to get her to come to work for them. Although the employee could have been paid on a commission basis at any time, she and the employer decided that she would receive a salary for the first three months of her employment and that thereafter she would work on a commission basis.

As a sales representative for the radio station, the employee was required to regularly visit with contacts for the purposes of developing new customers and maintaining and increasing the advertising frequency of existing clients. To meet these requirements, sales representatives were expected to travel on occasion to the contacts' places of business. The sales representatives were even given monthly $50 travel allowances for such purpose.

The employee made it a practice to meet with her clients at their places of business to learn more about them so that she could develop effective advertising campaigns. This was often accomplished outside the usual Monday through Friday, 8:00 a.m. to 5:00 p.m. business hours.

When the employee began working for the employer, she was assigned the Sheridan Livestock Sale Barn account. Gib Lloyd owned the sale barn. The employee claims that her managers instructed her to do what she needed to do in order to keep the account because Lloyd had threatened to discontinue advertising with the radio station. The employee remembers her managers being concerned that Lloyd would transfer his business to the station where the previous sales representative had gone to work and that they suggested she contact Lloyd as soon as possible.

The employee contacted Lloyd, and they met for breakfast. They talked about his business, and the employee developed advertising ideas for the sale barn that pleased Lloyd. The employee testified that, a few days later, Lloyd invited her to come to his property to ride the horses that he was planning to sell at a horse sale following the regular livestock sale on December 19, 1995. The employee claims that Lloyd asked her to ride his horses in the horse sale. She remembers that she agreed to participate in the horse sale and that, because she was

reluctant to ride an unfamiliar horse through the ring, Lloyd invited her to come to the sale barn on the Saturday before the sale to familiarize herself with the horses.

The radio station managers testified that they thought the invitation extended to the employee to ride horses was a personal one and that they did not pressure or require the employee to go riding that Saturday. The employee claims that she had her own horse, which she could have ridden that day if she had wanted to, and that she expressed to her mother and some friends that she felt obligated to go riding with Lloyd so that Lloyd would continue advertising with the radio station.

Lloyd testified that, even though he and the employee did not have anything more than a business relationship and the employee did not give him any reason to think the Saturday meeting was a date, he considered it to be a "boy/girl deal" and assumed that the employee agreed to ride the horses because she was interested in horses. Lloyd also testified that he appreciated the employee's interest in his business but claims that he did not intend to have her ride his horses in the upcoming sale. In fact, he stated that he did not plan to sell any horses at the Tuesday horse sale.

The employee kept her plans to go riding with Lloyd and sustained a severe closed head injury while she was attempting to mount a horse at the sale barn. The employee is not able to recall anything which occurred on that Saturday due to the seriousness of her injuries, but Lloyd testified that, as the employee was mounting the horse, "the horse stepped forward and . . . she got off balance and her foot got behind the saddle and the horse spooked and went sideways and then she fell on the ground." He also stated that the only business they discussed that day was his satisfaction with the new promotional spots.

The employee filed an injury report with the Division of Workers' Safety and Compensation, and the division denied her claim. The employee objected to the division's final determination and requested a contested case hearing. After a hearing on the matter, the hearing examiner denied her claim. The

employee requested a review in the district court, and the district court affirmed the hearing examiner's order. The employee appeals to this Court.

## STANDARD OF REVIEW

 When we review a decision in a worker's compensation case, we do not accord deference to the district court's decision. *Shaffer v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 960 P.2d 504, 506 (Wyo.1998). Instead, we review the case as if it had come directly to this Court from the agency. *Id.* Judicial review of an agency's action is governed by Wyo. Stat. Ann. § 16–3–114(c) (Michie 1997). W.R.A.P. 12.09(a).

## DISCUSSION

The employee contends that the hearing examiner applied the wrong burden of proof to this case. She maintains that he denied her claim for benefits because "the Claimant has not proved by a preponderance of the evidence that there was any requirement for her to go horseback riding." She argues that she should have been required to prove by a preponderance of the evidence that her injury arose out of and in the course of her employment.

To qualify for benefits, the employee must have sustained an injury pursuant to Wyo. Stat. Ann. § 27–14–102(a)(xi) (Michie Supp. 1998), which provides:

(xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

An "injury" does not include injuries "sustained while engaged in recreational or social events under circumstances where an employee was under no duty to attend and

where the injury did not result from the performance of tasks related to the employee's normal job duties or as specifically instructed to be performed by the employer." Section 27–14–102(a)(xi)(H).

 The employee carries the burden of establishing every essential element of a claim by a preponderance of the evidence. *Everheart v. S & L Industrial,* 957 P.2d 847, 852 (Wyo.1998). As a part of her burden, she must show that her injury arose out of and in the course of her employment. *Id.* To prove that the injury arose out of and in the course of her employment, the employee must show that a causal connection existed between the injury and the employment. *Id.*

 Whether or not an employee's injury occurred in the course of her employment is a question of fact. *DeWall v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 960 P.2d 502, 503 (Wyo. 1998). We review an administrative agency's findings of fact by applying the substantial evidence standard. *Id.* Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. *Id.* We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. *Id.* Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Id.* If an agency's action "is supported by substantial evidence, its decision should be reversed only for errors of law. If the agency did not apply the correct rule of law, or applied it incorrectly, this Court does not defer to the agency's conclusion. The agency's errors of law are corrected by this Court." *Butts v. Wyoming State Board of Architects,* 911 P.2d 1062, 1065 (Wyo.1996) (citations omitted).

The part of the hearing examiner's order which the employee takes issue with states: "[T]he Claimant has not proved by a preponderance of the evidence that there was any requirement for her to go horseback riding." The employee focuses on this statement to argue that the hearing examiner applied the wrong burden of proof. We disagree that the hearing examiner's decision can be summed up by this isolated sentence.

The relevant portion of the hearing examiner's order states:

## CONCLUSIONS OF LAW

1. The Claimant has the burden of proving that her injury arose out of and in the course of her employment. *Hohnholt v. Basin Electric Power Coop.,* 784 P.2d 233, 235 (Wyo.1989).

2. W.S. § 27–14–102(a)(xi) defines injury as follows:

"(xi) Any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business...."

Thus, an injury may arise out of and in the course of employment if the Claimant is at work or in or about the premises occupied, used or controlled by the employer. Or, an injury may be a harmful change arising out of, or in the course of employment incurred while at work in places where a[n] employer's business requires an employee's presence. It is undisputed that the injury in this case, a severe injury resulting from a horseback riding incident, took place on premises not owned or controlled by the employer. Thus, it must be determined whether or not the Claimant was at work at the time of the horseback riding accident and whether or not her employer's business required her presence. For such a nexus to exist between the injury and the employment, there must be a causal connection between the injury and course of employment and such a causal connection is supplied when there is a nexus between the injury and some condition, activity, environment or requirement of the employment. *Parker v. Energy Development Co.,* 691 P.2d 981 (Wyo.1984).

The Claimant was not required by her employer to engage in after hour social activities with her customers. Although such activities may be conducive to improving the employer's business and thus Claimant's business, there was no objective requirement that she do so. Whether a nexus exists between an injury in the course of employment is a question of fact. *Stuckey v. State ex rel. Wyoming Workers' Compensation Division*, 890 P.2d 1097, 1099 (Wyo.1995).... In this particular case, the Claimant has not proved by a preponderance of the evidence that there was any requirement for her to go horseback riding.

In this case, the Claimant's interaction with clientele at any time or place which she might happen to meet them was undoubtably conducive to good business relations. However, even if such social interaction enhances the employee's performance and benefits her employer, the required nexus has not been established. The Claimant was not in a place her employer required her to be and was not engaging in an activity which her employer required as a condition of her employment. Thus, the Claimant was not injured in the course of employment. *Cronk v. City of Cody*, 897 P.2d 476, 478 (Wyo.1995).

■ After reading the hearing examiner's order in its entirety, this Court concludes that the hearing examiner applied the correct burden of proof. He considered whether a sufficient causal connection existed between the employee's injury and her employment. He simply determined that such a connection was not present in this case. We agree that he used the fact that the employee was not required, as a condition of her employment, to go horseback riding as a deciding factor, but he did not transform this fact into the applicable burden of proof.

We turn now to the employee's contention that the hearing examiner's decision was not supported by substantial evidence. We have considered cases with similar fact patterns, which we find helpful in this case.

In *Cronk v. City of Cody*, 897 P.2d 476 (Wyo.1995), a police officer was injured while he was lifting weights in a gym located in the Law Enforcement Center. 897 P.2d at 477. Cronk claimed that staying in good physical condition made him a better police officer and that he was, therefore, injured in the course of his employment even though he was off duty at the time of his injury. *Id.* This Court affirmed the district court's decision that a nexus did not exist between the injury and Cronk's employment because the officers were not required to use the gym or participate in any type of physical fitness program as a condition of their employment. 897 P.2d at 478.

This Court decided *DeWall*, 960 P.2d 502, just last year. In that case, DeWall was a ski instructor who was injured while he was skiing between line ups. 960 P.2d 502–03. He was scheduled to instruct on the day of his injury, but no one needed a lesson at the morning line up so he went skiing with a friend. 960 P.2d at 503. He argued that skiing between lessons made him better at his job and, therefore, benefited his employer because it enabled him to maintain his skills, stay physically fit, and become familiar with the snow conditions in case he needed to take a student up on the mountain for a lesson. *Id.* We held that, because the employer did not require, as a condition of employment, its instructors to ski unless they were giving a lesson, DeWall was not acting within the scope of his employment at the time of his injury even though skiing might have made him better at his job. 960 P.2d at 504.

■ Although the employee in this case makes a valiant attempt at distinguishing these cases, her arguments are ultimately unpersuasive. We recognize that the employee was attempting to retain Lloyd's advertising by showing an interest in his business. She simply went outside the course and scope of her employment in order to do a good job for her employer. Although her dedication to her job and her desire to please her client are commendable, we agree with the hearing examiner that a causal connection between the injury and the employment just did not exist. A logical end to compensation would not occur if we were to allow compensation for activities that are not required by employers or are not related to an

employee's normal job duties. This would be particularly true in a case such as this one where the employee, in her own discretion, decided to "ride an unfamiliar horse in a snowstorm," admittedly a somewhat dangerous activity. To compensate injuries that occur after an employee makes an individual decision to engage in some activity which is neither required by the employer nor related to her normal job duties would put an unbearable strain on the workers' compensation fund. The fund would, in effect, become a general health and accident insurance fund, a purpose for which it was not intended. *See State ex rel. Wyoming Workers' Safety and Compensation Division v. Bruhn,* 951 P.2d 373, 377 (Wyo.1997). For the foregoing reasons, we hold that the hearing examiner properly denied the employee's request for benefits.

The employee asserts various subissues in her brief. Our discussion, however, is dispositive of those issues. We, therefore, will not address them individually in this opinion. *State v. McDermott,* 962 P.2d 136, 140–41 (Wyo.1998).

Affirmed.